MATTHEW S. FOY (SBN: 187238)
mfoy@grsm.com
JAMES L. ELLISON (SBN: 302372)
jlellison@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Plaintiff
AMGUARD INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMGUARD INSURANCE COMPANY, a Pennsylvania Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>OPTIMA FUNERAL HOME, INC., a California Corporation, HUGO SANCHEZ, a California resident, ANA MARIA BELCHER, a California resident, ARISTEO LUCAS, a California resident, ILDEFONSO MONTES, a California resident, ALFONSO MONTES, a California resident, JASMIN MONTES, a California resident, ANTHONY MONTES, a California resident, and DOES 1 through 10,<br><br>Defendants. | CASE NO. 2:22-cv-04179<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT** |

Plaintiff AMGUARD INSURANCE COMPANY ("AmGUARD") brings this action against Defendants OPTIMA FUNERAL HOME, INC., HUGO SANCHEZ, ANA MARIA BELCHER, ARISTEO LUCAS, ILDEFONSO MONTES, ALFONSO MONTES, JASMIN MONTES, ANTHONY MONTES (collectively "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201(a), requesting a judgment declaring the respective rights and obligations of the parties in connection with an actual controversy arising under a Businessowner's policy issued by AmGUARD to Defendant Optima Funeral Home, Inc. ("Optima").

2. AmGUARD brings this action to obtain a declaration that it owes no duty to defend Optima, Hugo Sanchez ("Sanchez"), Ana Maria Belcher ("Belcher"), and Aristeo Lucas ("Lucas") (collectively, the "Optima Defendants") in connection with an underlying lawsuit entitled *Ildefonso Montes, et al. v. Optima Funeral Home, Inc. et al.*, Los Angeles County Superior Court, Case No. 21STCV13397 (the "Underlying Lawsuit"). AmGUARD further brings this action to obtain a declaration that it owes no duty to indemnify the Optima Defendants in connection with the Underlying Lawsuit.

3. This is also an action for reimbursement of amounts paid or to be paid by AmGUARD for defense costs or any other amounts on behalf of the Optima Defendants in connection with the Underlying Lawsuit.

4. AmGUARD has named Ildefonso Montes, Alfonso Montes, Jasmin Montes, and Anthony Montes (the "Montes Parties") as co-defendants in this action as they are the plaintiffs in the Underlying Lawsuit and in order to bind them to the declarations sought herein.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff AmGUARD is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Pennsylvania.

6. Defendant Optima is a corporation organized and existing under the laws of the State of California with its principal place of business in California.

7. Defendant Sanchez is a resident of Los Angeles, California.

8. Defendant Belcher is a resident of Los Angeles, California.

9. Defendant Lucas is a resident of Los Angeles, California.

10. Each of the Montes Parties are residents of Los Angeles, California.

11. This Court has jurisdiction over this matter pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

12. Rule 57 of the Federal Rules of Civil Procedure provides that AmGUARD may seek a declaration from this Court as to the rights and obligations among and between the parties in relation to the AmGUARD-issued insurance policy at issue, including, but not limited to, whether AmGUARD has an obligation to provide a defense and/or indemnity to the Optima Defendants in connection with Underlying Lawsuit and the claims which are the subject of the Underlying Lawsuit.

13. Venue is proper in this Court pursuant to U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## THE UNDERLYING LAWSUIT

**A.     The Complaint in the Underlying Lawsuit**

14. On April 8, 2021, the Montes Parties filed a complaint ("Complaint") in the Underlying Lawsuit asserting causes of action for Negligence, Unlawful Business Practice, Professional Malpractice, and Intentional Infliction of Emotional Distress against the Optima Defendants. Attached hereto as **Exhibit A**, and incorporated by reference, is a true and correct copy of the Complaint filed in the Underlying Lawsuit (the "Complaint").

15. Optima is a duly licensed funeral home which is required to operate in compliance with applicable California statutes and regulations. (Complaint, at ¶3.)

16. Sanchez, Belcher, and Lucas are each funeral directors licensed by the State of California and Optima employees. (Complaint, at ¶2.)

17. Plaintiffs in the Underlying Lawsuit, the Montes Parties, allege that on or about February 3, 2021 the Optima Defendants wrongfully allowed Goldin DeLuca to be cremated without the Montes Parties' knowledge or authorization. (Complaint, at ¶15.) The Montes Parties allege that Goldin DeLuca's cremation was illegal and violated California Health & Safety Code Sections 7100, 7110, and 7111. (Complaint, at ¶ 16.)

18. Goldin DeLuca was the wife of Ildefonso Montes and the mother of Alfonso Montes, Jasmin Montes, and Anthony Montes. (Complaint, at ¶¶6-7.)

19. The Montes Parties allege that Goldin DeLuca and Ildefonso Montes arranged their after-death plans by, in part, purchasing a double-capacity burial space so that their remains could be entombed together. (Complaint, at ¶18.)

20. Goldin DeLuca died on December 27, 2020, at Community Hospital. The Montes Parties allege that they understood services would be delayed due to the COVID-19 pandemic, but were assured Ms. DeLuca's body would be maintained in a refrigerated facility at the hospital. (Complaint, at ¶¶9-10.)

21. The Montes Parties allege that Community Hospital contracted to store bodies in Optima's refrigerated holding facility and released Goldin DeLuca's body to Optima without their authorization, accompanied by a Death Report identifying Alfonso Montes as Ms. DeLuca's son and which allegedly provided his contact information. (Complaint, at ¶¶11, 13.)

22. The Montes Parties allege that the Optima Defendants' failure to adhere to a reasonable method for tracking bodies in its holding facility ultimately resulted in Optima transporting Goldin DeLuca's body to Affordable Cremations of the High Desert for cremation. (Complaint, at ¶14.) The Montes Parties allege that the Optima Defendants erred in failing to note Alfonso Montes' contact information, failing to affix a note with Alfonso Montes' identity onto Ms. DeLuca's remains, and that Belcher and Lucas completed forms indicating that "No Family was ever

found" in the process of providing authority for Ms. DeLuca's cremation. (Complaint, at ¶¶14-15.)

23. Under their Negligence cause of action, the Montes Parties allege that the Optima Defendants failed to put in place or follow procedures for the identification of the deceased in their care as required to determine the existence of the deceased's family members. (Complaint, at ¶20.) The Montes Parties allege that Optima failed to train its staff to assure that bodily remains were properly identified at the time of acceptance and that family members were notified. (Complaint, at ¶¶21-24.) The Montes Parties further allege that the Optima Defendants mishandled Goldin DeLuca's remains, made no effort to determine if she had family members to notify, and attempted by misrepresentation to conceal the above conduct. (Complaint, at ¶¶26, 29, 30.)

24. Under their Unlawful Business Practices cause of action, the Montes Parties allege that the Optima Defendants' handling of Goldin DeLuca's remains violated California Code of Regulations section 1204(b). (Complaint, at ¶36.)

25. Under their Professional Negligence cause of action, the Montes Parties allege that the Optima Defendants breached the standard of care required by licensed Funeral Establishments and Funeral Directors by failing to locate and notify Goldin DeLuca's relatives prior to her cremation. (Complaint, at ¶¶39-40.) The Montes Parties allege that if Sanchez, Belcher, and Lucas had acted within the required standard of care and practice applicable to funeral directors, errors that resulted in Ms. DeLuca's cremation would have been discovered. (Complaint, at ¶40.)

26. Under their Infliction of Emotional Distress cause of action, the Montes Parties allege that on February 22, 2021, Lucas and Sanchez called Jasmin Montes and attempted to cover-up Goldin DeLuca's cremation by offering free cremation services. (Complaint, at ¶¶43-46.) The Montes Parties allege that they rejected the offers and advised that Ms. DeLuca had made plans to be buried with her husband. (Complaint, at ¶¶43-46.) The Montes Parties further allege that they met with

1 defendant Sanchez, who agreed to provide traditional embalming and the presentation of Ms. DeLuca's remains, but refused to allow any viewing before filler and make-up could be applied. (Complaint, at ¶¶47-49.) The Montes Parties additionally allege that Sanchez called Jasmin Montes on February 23, 2021, advising of Ms. DeLuca's cremation and claiming that Community Hospital relayed that Ms. DeLuca did not have family before admitting that the Death Report identified Alfonso Montes. (Complaint, at ¶¶50 – 51.) The Montes Defendants allege that the Optima Defendants ultimately offered $50,000 to them as a "buy-off." (Complaint, at ¶53.)

**B.     The Optima Defendants' Answer**

27.     The Optima Defendants filed a verified Answer to Plaintiffs' Amended Complaint on July 23, 2021 (the "Answer"). Attached hereto as **Exhibit B**, and incorporated by reference, is a true and correct copy of the Optima Defendants' Answer.

28.     In the Answer, Optima admits that it was a licensed funeral home and required to operate consistent with "its Rules and Regulations" and the "Regulations of the Cemetery and Funeral Bureau as applicable to Funeral Establishments." (Answer, at ¶3.) Sanchez, Belcher, and Lucas admit they were funeral directors licensed by the State of California and Optima employees. (Answer, at ¶2.)

29.     The Optima Defendants "admit to negligence in the handling of [Ms. DeLuca's] body." (Answer, at ¶¶21, 39-40.)

30.     The Optima Defendants also admit to "initially attempting to conceal from [the Montes Parties] the fact [Goldin DeLuca's] body had been inadvertently cremated, which resulted in [the Montes Plaintiffs] claims for damages in" the Underlying Lawsuit. (Answer, at ¶55.)

**C.     AmGUARD's Coverage Position**

31.     In its coverage position letter relating to the Montes Parties' complaint in the Underlying Lawsuit, AmGUARD has agreed to defend the Optima Defendants

subject to a reservation of rights, including the right to seek reimbursement of defense costs.

## THE POLICY

32. AmGUARD issued a Businessowner's Policy, policy number OPBP246650, to Optima for the policy period January 11, 2021 to January 11, 2022 (the "Policy"). The Policy affords liability coverage subject to a $1 million each occurrence limit. Attached hereto as **Exhibit C**, and incorporated by reference, is a true and correct copy of the Policy.

33. The Policy affords Businessowner's Coverage pursuant to form BP 00 03 01 10, which provides in part as follows:

### BUSINESSOWNER'S COVERAGE FORM

**SECTION II – LIABILITY**

**A. Coverages**

**1. Business Liability**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result.

***

    **b.** This insurance applies:

        **(1)** To "bodily injury" and "property damage" only if:

  **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(c)** Prior to the policy period, no insured listed under Paragraph C.1. Who Is an Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

*\*\*\**

**f. Coverage Extension – Supplementary Payments**

 **(1)** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

*\*\*\**

 **(e)** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

*\*\*\**

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

*\*\*\**

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Any body piercing services (not including ear lobe piercing), tattooing and similar services;

**(9)** Services in the practice of pharmacy; and

**(10)** Computer or software design, advice or consultation, programming services including virus protection, firewall or web site design.[1]

---

[1] Subsections (8), (9), and (10) under Exclusion j. Professional Services appear as modified by the "CA Policy Customizations" endorsement, form BP 99 CA 09 16.

> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

***

**C. Who Is An Insured**

    **1.** If you are designated in the Declarations as:

***

        **d.** An organization other than a partnership, joint venture or limited liability, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

***

    **2.** Each of the following is also an insured:

        **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

***

**E. Liability And Medical Expenses General Conditions**

***

    **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

        **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

      **(2)** Authorize us to obtain records and other information;

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

\*\*\*

**F. Liability And Medical Expenses Definitions**

\*\*\*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\*\*\*

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

\*\*\*

34. In addition to the terms, conditions, exclusions, and definitions set forth above, the Policy contains other provisions which AmGUARD may rely on in support of the relief sought herein.

## FIRST CAUSE OF ACTION

**(Declaratory Relief Against the Optima Defendants – No Duty to Defend)**

35. AmGUARD incorporates by reference paragraphs 1 through 34 inclusive as though set forth in full herein.

36. An actual and present controversy has arisen and now exists between AmGUARD and the Optima Defendants concerning their respective rights and obligations under the Policy with respect to the Underlying Lawsuit. AmGUARD contends it owes no duty to defend Optima, Sanchez, Belcher, and/or Lucas in connection with the Underlying Lawsuit.

37. AmGUARD contends that it owes no duty to defend the Optima Defendants in connection with the Underlying Lawsuit in light of the Montes Parties' claims and allegations therein due to the above-quoted Professional Services exclusion in the Policy (Exclusion j.).

38. AmGUARD further contends that it owes no duty to defend the Optima Defendants in connection with the Underlying Lawsuit in light of the Montes Parties claims and allegations therein, and the conduct of the Optima Defendants, due to other terms, provisions, conditions, exclusions, and endorsements in the Policy and applicable law, including pursuant to the insuring agreement requirements that the Underlying Lawsuit allege "bodily injury" or "property damage."

39. AmGUARD is informed and believes, and on that basis alleges, that the Optima Defendants contend that AmGUARD owes them a duty to defend under the Policy in connection with the Underlying Lawsuit despite the foregoing.

40. AmGUARD seeks a judicial declaration regarding the respective rights and duties of the parties under the Policy and, specifically, that AmGUARD did not and does not owe a duty to defend the Optimate Defendants in connection with the Underlying Lawsuit.

41. AmGUARD has no adequate remedy at law and a judicial declaration is necessary and appropriate at this time.

## SECOND CAUSE OF ACTION

**(Declaratory Relief Against the Optima Defendants – No Duty To Indemnify)**

42. AmGUARD incorporates by reference paragraphs 1 through 41 inclusive as though set forth in full herein.

43. An actual and present controversy has arisen and now exists between AmGUARD and the Optima Defendants concerning the respective rights and obligations under the Policy with respect to the Underlying Lawsuit. AmGUARD contends it owes no duty to indemnify the Optima Defendants in connection with the Underlying Lawsuit as a result of the Professional Services exclusion in the Policy, and other terms, provisions, conditions, exclusions, and endorsements contained therein and pursuant to applicable law.

44. AmGUARD is informed and believes, and on that basis alleges, that the Optima Defendants contend that AmGUARD owes them a duty to indemnify under the Policy in connection with the Underlying Lawsuit despite the foregoing.

45. AmGUARD seeks a judicial declaration regarding the respective rights and duties of the parties under the Policy and, specifically, that AmGUARD does not owe a duty to indemnify in connection with the Underlying Lawsuit.

46. AmGUARD has no adequate remedy at law and a judicial declaration is necessary and appropriate at this time.

## THIRD CAUSE OF ACTION

### (Reimbursement Against the Optima Defendants)

47. AmGUARD incorporates by reference paragraphs 1 through 46 inclusive as though set forth in full herein.

48. AmGUARD's agreement to participate in the defense of the Optima Defendants in the Underlying Lawsuit is, and has always been, subject to a full and complete reservation of rights, including the right to seek reimbursement of amounts incurred in the defense of claims that were not potentially covered under the Policy or any other amounts that have been incurred or which may be incurred in the future that are not covered or potentially covered under the Policy.

49. AmGUARD has paid, and will continue to pay, amounts to defend the Optima Defendants in the Underlying Lawsuit and otherwise which are neither covered nor potentially covered under the Policy, resulting in unjust enrichment to the Optima Defendants in the amount of such payments.

50. As a result of such unjust enrichment, a quasi-contractual right of reimbursement has arisen in favor of AmGUARD against the Optima Defendants.

## PRAYER

WHEREFORE, AmGUARD prays for judgment as follows:

1. For a judicial determination that AmGUARD owes no duty to defend the Optima Defendants in connection with the Underlying Lawsuit;

2. For a judicial determination that AmGUARD owes no duty to indemnify the Optima Defendants in connection with the Underlying Lawsuit;

3. For an order that the Optima Defendants are obligated to reimburse AmGUARD for amounts AmGUARD has incurred and will incur in the defense of the Underlying Lawsuit, and for any other amounts AmGUARD has incurred or may incur on behalf of the Optima Defendants in connection with the Underlying Lawsuit;

4. For costs of suit incurred in this action, according to proof; and

5. For such other relief as the Court may deem just and proper.

Dated: June 17, 2022

GORDON REES SCULLY MANSUKHANI, LLP

By: _____
Matthew S. Foy
James L. Ellison
Attorneys for Plaintiff
AMGUARD INSURANCE COMPANY

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1232262/68251702v.2

-16-
COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT